825 So.2d 406 (2002)
John Wayne PARSONS, Appellant,
v.
STATE of Florida, Appellee.
No. 2D00-4686.
District Court of Appeal of Florida, Second District.
May 3, 2002.
*407 James Marion Moorman, Public Defender, and Bruce P. Taylor, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Deborah F. Hogge, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
John Wayne Parsons appeals his judgment and sentence for two counts of felon in possession of a weapon. Mr. Parsons pleaded guilty to both counts, reserving the right to challenge the trial court's denial of his motion to suppress evidence. That evidence was observed and seized when a deputy sheriff ordered Mr. Parsons out of his automobile. We reverse because this case is controlled by Popple v. State, 626 So.2d 185 (Fla.1993), and Danielewicz v. State, 730 So.2d 363 (Fla. 2d DCA 1999). Although we understand the officer's decision to order Mr. Parsons from his automobile, this act transformed a consensual encounter into a Terry[1] stop at a time when the officer had not developed *408 what the case law regards as a well-founded suspicion to support an investigatory stop. Accordingly, we must suppress the dispositive evidence.
On the evening of May 8, 2000, Mr. Parsons was in his parked automobile in a small parking lot adjacent to a temporary employment agency on the corner of Nebraska Avenue and 120th Street in Tampa, an allegedly high-crime area. At approximately 1:40 a.m., a deputy sheriff parked his patrol car behind Mr. Parsons' automobile.[2] He exited his car and approached Mr. Parsons' automobile. Using his flashlight, the deputy looked inside the driver's window and observed Mr. Parsons, who appeared to be passed out in the driver's side seat of the automobile with a pair of binoculars on his lap. The car engine was turned off. The parking lot is across the street from a motel that the deputy sheriff knew to be frequented by prostitutes.
The deputy knocked on the automobile window and Mr. Parsons jumped. Upon awakening, Mr. Parsons appeared nervous, and began sweating and shaking. The deputy then asked Mr. Parsons for identification, which Mr. Parsons immediately provided. While conducting a records check, the deputy discovered that Mr. Parsons was a sex offender.[3] The deputy returned to Mr. Parsons' automobile and questioned him about his presence in the area. The deputy could not recall Mr. Parsons' response to his question but did not remember receiving any reasonable explanation for his presence. The deputy then instructed Mr. Parsons to step out of his automobile. The deputy admitted that Mr. Parsons was not free to leave at that point. As Mr. Parsons was exiting his automobile, the deputy sheriff saw a stun gun in the automobile. A further search of the automobile disclosed a can of pepper spray.
During a consensual citizen encounter, a police officer does not need reasonable or founded suspicion to question an individual because the individual is free to decline to answer any question and may leave. Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); Thomasset v. State, 761 So.2d 383, 385 (Fla. 2d DCA 2000). A citizen encounter becomes an investigatory, or Terry, stop, once an officer shows authority in a manner that restrains the defendant's freedom of movement such that a reasonable person would feel compelled to comply. Popple, 626 So.2d at 186. As a general rule, when an officer either requests or orders an individual to exit his or her vehicle, a citizen encounter becomes an investigatory stop. See, e.g., Popple, 626 So.2d at 188; Rinehart v. State, 778 So.2d 331 (Fla. 2d DCA 2000); Thomasset, 761 So.2d at 386. Thus, once the deputy ordered Mr. Parsons out of his automobile, Mr. Parsons was not free to leave and the officer's encounter became an investigatory stop.
To justify an investigatory stop, a police officer must have a well-founded suspicion that the person has committed, is committing, or is about to commit a crime. § 901.151(2), Fla. Stat. (1999); see also Terry, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; Popple, 626 So.2d at 186; Danielewicz, 730 So.2d at 364; G.J.P. v. State, 469 So.2d 826, 827 (Fla. 2d DCA 1985). Bare suspicion or a mere hunch is insufficient. Popple, 626 So.2d at 186. In determining whether sufficient evidence to *409 support a well-founded suspicion exists, a court should consider all facts known by police at the time of the stop. Bartlett v. State, 508 So.2d 567, 568 (Fla. 2d DCA 1987). Factors such as time, location, suspect's physical appearance, suspect's behavior, or anything unusual that suggests criminal activity must be considered. Id.
The deputy testified that when he first approached Mr. Parsons he thought Mr. Parsons might be intoxicated or loitering. By the time the deputy had determined that Mr. Parsons was a sex offender, nothing in the record suggests that the deputy still believed that Mr. Parsons might be intoxicated. Although a reported sex offender with binoculars on his lap, who is asleep in his automobile across the street from a motel frequented by prostitutes, is admittedly a troubling circumstance that should cause a reasonable police officer to be suspicious, neither the deputy nor the State has been able to articulate a crime connected to these facts that would support a Terry stop. The information possessed by the deputy may well have been enough to cause him to believe that he had the right to make Mr. Parsons exit his automobile, but it is impossible to distinguish the level of suspicion in this case from the bare suspicion or mere hunch that resulted in suppression under similar circumstances with drivers' sleeping in their automobiles in Popple and Danielewicz.
Accordingly, we reverse the trial court's denial of the motion to suppress and remand with instructions to discharge Mr. Parsons for these offenses.
Reversed and remanded.
SALCINES and STRINGER, JJ., Concur.
NOTES
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[2] The record is unclear whether the police officer's patrol car blocked Mr. Parsons' automobile in the parking lot. No one testified that the patrol car blocked Mr. Parsons' automobile and no one argued that the positioning of the patrol car constituted a seizure.
[3] Nothing in the record reflects that Mr. Parsons was on sex offender probation or any other type of probation for previous offenses at the time of the stop in this case or that the deputy sheriff believed he was on probation.